## PIKE *vs.* BUTLER and BUTLER.

The lessor of premises covenanted, that if the lessee should erect a two story dwelling house corresponding in elevation with a house already built on a part of the premises, the lessor, at the termination of the lease, would pay for the building so to be erected, at a valuation to be made by appraisers to be appointed by the parties. The tenant erected a building which did not correspond in height with the dwelling referred to, and was finished for a cabinet-maker's shop, but was capable of being converted into a dwelling in a few days' time, at a moderate expense. The lessor had early knowledge of the character of the building so erected, and made no objection thereto, nor did he give any intimation that he should refuse to pay for it, until just before the lease expired, when it was too late to make the building conform to the requirement of the lease. On the contrary, before the lease expired he concurred in the appointment of appraisers, who met and examined the premises in the presence of the parties. Three days before the lease expired, the

lessor informed the appraisers that the building was not according to the contract, and insisted that the lessee had no claim for compensation. No award was made by the appraisers. On bill filed by the lessee for relief and to compel payment of the value of the building, *it was held*, that there was nothing in the circumstances to make out a case of fraud, or to prevent the lessor from insisting as a defence that the building did not conform to the contract; and therefore *further held*, that the bill could not be sustained.

On the 1st of May, 1833, Thomas C. Butler leased to Elizabeth Parcels a lot in the city of New-York, on which was a two story brick dwelling house, for the term of five years, with a privilege of renewal for five years longer. The lease con- [361] tained a covenant on the part of the lessor, that if the lessee should erect upon the lot a *brick dwelling house*, corresponding in elevation with the house then on the premises, the lessor, at the termination of the lease, or at the end of the second term (if renewed) would pay to the lessee the value of the building, to be ascertained by three appraisers, not to exceed $2500, one of the appraisers to be selected by each party, and the two thus chosen to select the third. In April, 1834, Mrs. Parcels, the lessee, assigned the lease to the plaintiff, who proceeded soon after to erect and complete a brick building on the lot, designed to be used and occupied *as a cabinet-maker's shop*, and not corresponding in height with the dwelling already on the premises ; but the building so erected was capable of being converted into a dwelling, according to the requirement of the lease, without any considerable delay or expense. The lease was continued during the whole ten years, and the building so erected was occupied to the end of the time as a cabinet-maker's shop. In May, 1834, Thomas C. Butler, the lessor, conveyed the premises to Jonas Butler in fee, and after that time during the continuance of the lease, Thomas C. acted as the agent of Jonas in respect to the premises.

In August, 1843, the plaintiff, as assignee of the lease, filed the bill in this cause against the said Thomas C. Butler and Jonas Butler, to compel them or one of them to pay the value of the building so erected. The bill alledged and insisted, among other things, that the defendants by their conduct in-

duced the plaintiff to believe that the building, although not erected and completed for a dwelling according to the terms of the lease, was nevertheless satisfactory to them, and that they would pay him the value thereof, until it was too late for him (the plaintiff) to convert it into a dwelling according to the contract. On the ground of fraud therefore the plaintiff insisted that in equity he was entitled to relief and to be paid the value of the building. It appeared that appraisers were chosen shortly before the expiration of the lease as therein provided for, that they met on the 22d of April, 1843, and again on the 27th [362] of the same month, when a letter was addressed to them by Thomas C. Butler, calling their attention to the terms of the lease, and stating that the plaintiff was not entitled to any compensation for the building, for the reason that it did not conform to the building clause in said lease. This was only three days before the lease expired. The appraisers made no award or determination of the matter.

The cause was originally heard before the assistant vice chancellor of the first circuit, who dismissed the bill. His decree was reversed on appeal by the supreme court, sitting in the first district, and a decree was directed granting the relief prayed for in the bill. See 4 Barbour's Supreme Court Reports, where a more detailed statement of the case will be found. The defendants appealed to this court.

*E. Sandford*, for appellants.

*C. O'Conor*, for respondent.

GARDINER, J. The nonconformity of the building to the contract in the lease is admitted. The facts relied upon to show that the defendant fraudulently induced a belief upon the part of the complainant that the building erected by the latter would be accepted and paid for, until it was too late to make the necessary alterations, are 1. That no objection was made by the defendant to the building as it was constructed, until the last meeting of the appraisers, three days before the expiration of the

lease; 2. The concurrence of the defendant in the appointment of the appraisers; and 3. His failing to state, at their first meeting, the grounds upon which he relied to resist the claim of the complainant.

All these may, perhaps, be fairly enough resolved into a single objection, that the defendant at no time, prior to his letter to the appraisers, apprised the complainant of his intention to insist upon a strict fulfilment of his covenant. It is obvious from the bill, that the complainant did not rely upon this omission, alone, as an authority to him to depart from his contract, because it alledges that Butler, *at the time* of the erection of [363] the building, approved of the variation from the contract, and often *admitted* to the complainant his right to compensation. It was the declaration of the defendant, and not his omission to speak, that really influenced the defendant, as is fairly to be inferred from his own statement of his case. If we leave out this averment, and it is denied by the answer and not proved, the remaining facts to which I have alluded, would seem to be rather slight evidence of fraud. They would rather indicate the settled determination of a selfish man, to claim the full benefit of the agreement, leaving it to the *contract* to declare what the complainant must perform, and the defendant must accept. Such conduct may seem harsh, and repulsive, but it is very far from being fraudulent. It is the enforcement of a legal right, operating oppressively in the particular case, but against which it is difficult for law or equity to afford relief, without substituting the undefined and therefore dangerous discretion of a court, for the fixed principles upon which the law in relation to contracts should be administered.

My opinion is that the judgment should be reversed.

Judgment reversed.