## WELLS *vs.* SELWOOD.

In actions for a breach of warranty on a sale of goods, the measure of damages is, the difference between the value of the goods if they had corresponded with the warranty, and their actual value.

An agreement, by the defendant, to make and finish, for the plaintiff, "in a good and workmanlike manner, and erect in the J. cemetery, a granite mon- ument, to be made from good Quincy granite, and to be of as good quality of granite as the monument of S. C., now standing in said cemetery," is an agreement not only as to the model or sample, as to form and size, but also as to the *quality of the granite;* and is a warranty, as to those particulars.

In an action for the breach of such an agreement, the referee found that the granite of the monument, erected by the defendant, was not of as good quality as that of the monument of S. C. standing in the said cemetery, but on the contrary, was coarse, dull, too much impregnated with iron, and in all respects greatly inferior to the S. C. monument; and that the defects therein were organic, permanent and incurable. And he found that the dif-

Wells *v.* Selwood.

ference between the monument as erected, and one as good as the S. C. monument, to be $200, for which sum he reported in favor of the plaintiff.

*Held,* 1. That the payment, by the plaintiff, after the erection of the monument, of the contract price, although strong evidence of acceptance, and, standing alone, would be sufficient, yet was not conclusive, and might be explained.

2. That such payment was satisfactorily explained by the finding of the referee, that "when the said monument was erected and paid for, it was so covered with dirt and dust that the plaintiff could not, and did not, discover the inferior quality of the granite, and he made payment therefor upon the representation of the defendant that the rains and frosts would clear up said monument, and make it as bright as the S. C. monument; which representations the plaintiff believed."

3. That the lapse of time before suit brought, although also tending to prove delivery and acceptance, was yet only a question of evidence, and not conclusive. And that a finding by the referee "that the rains and frosts did not clean the said monument, so as to make it as bright as the S. C. monument, but on the contrary, after the loose dirt was washed from the surface, it grew worse in appearance, by time and exposure to the weather; that the representations of the defendant did not prove true, but on the contrary, the said monument grew, and still grows, worse, by time and exposure to the weather," was a sufficient answer to the objection that the plaintiff did not bring his action immediately.

4. That under the law of warranty these objections, even if not excused or explained, were of no avail, as a defense.

5. That the contract, although treated as an executory contract for the sale of goods, was more appropriately a *building contract*, between the parties; and that the monument, when erected, having become a part of the real estate, and being ponderous in its nature, the purchaser was not bound to return it, on discovering its defects, or to give notice to the builder to take it away.

In a case of warranty, the purchaser is not bound, as a matter of law, to return the goods, or to notify the vendor of the defects.

In no case, where there is a simple warranty, has the vendee any right to return the goods; except when the right is reserved, in the contract.

The case of *Reed* v. *Randall*, (29 *N. Y.* 358,) commented on and distinguished.

In case of a breach of warranty, the buyer may bring his action at once, founding it upon such breach, without returning the goods; but his continued possession of the goods, and their actual value, will be considered, in estimating the damages.

The rule, in cases of warranty, is, that the acceptance of the article, on delivery, and the continuing of the possession and use of it, without notice of its defects, cast the burden of proof upon the purchaser, on the trial, to give a satisfactory explanation and reasonable excuse why he did not return the property, or give notice of its defects. In other words, he must overcome the strong presumption against him, that there has been a delivery by the

vendor, and an acceptance of the article by him; or that he has waived his objection.

If, in an action for a breach of warranty upon a sale of property which does not turn out to be of as good a quality as warranted, and continues to grow worse, with the lapse of time, the vendee is to be charged with its true value, he ought to have the right, at any time within the limitation of the statute, to see how worthless it will become. He is entitled to a reasonable opportunity for examination. · What is a reasonable time, is a matter of evidence for the referee. *Per* POTTER, J.

The mere occupation of a building, by the owner, is not a waiver of strict performance by the builder. The question of waiver is one of intention, depending on the circumstances.   ·

THIS is an action brought for breach of a written contract between the parties, as follows :

" Article of agreement made and entered into, this 12th of Nov., 1858, between Richard Selwood, of Fort Plain, Montgomery county, New York, and John E. Wells, of Johnstown, Fulton county, New York, witnesseth, that the said Selwood, for and in consideration of the covenants and agreements hereinafter contained, on the part of said Wells, hereby agrees to make and finish, in a good and workmanlike manner, and erect in the Johnstown cemetery, a granite monument, to be made from good Quincy granite, and to be of as good quality of granite as the monument of Scott Campbell, now standing in said cemetery. Said monument to be made like the said Campbell monument, except that the die is to be two inches higher, and the base have an O-gee moulding. The said monument to be of the same size of said Campbell monument, except the height of the die, as above mentioned ; or if there is any variation, it must be larger. The said Selwood, shall put and engrave on said monument the family name, " Wells," in letters of appropriate size, and in the proper place, and shall put on such other full inscriptions as shall be directed by said Wells, not exceeding six ; and he shall cause the same to be put up on such foundation in said cemetery grounds, as said Wells shall prepare for the same, and furnish his own derrick and other machinery

therefor; the said Wells to furnish hands to the number of six, to assist in setting the same upon its foundation.

If the monument is finished so as to be removed to the cemetery when the sleighing is good, the said Wells, on being notified by said Selwood, will transport the same from Fort Plain to said cemetery. Otherwise said Selwood is to cause it to be delivered at Fonda, and the said Wells will transport the same from thence to the cemetery. All this, the said Selwood agrees on his part, shall be done in a good and workmanlike manner, and the monument erected in good order, free from breaks, or other damage.

The said Wells, on the performance of the above, on the part of said Selwood, agrees to pay him the sum of three hundred and fifty dollars. The monument to be set up next spring, after the ground settles."

The action was referred to Horace E. Smith, Esq., sole referee, to hear and determine, and the said referee decided and reported thereon as follows :

1st. That on the 12th day of November, 1868, the parties made the written contract set forth in the complaint.

2d. That under, and in pursuance of said agreement, the said Selwood delivered a monument at Fonda; the said Wells transported the same to the cemetery at Johnstown, and the said Selwood, with the help of said Wells, as stipulated in the agreement, erected said monument upon the lot of the said Wells in said cemetery, on or about the 17th day of August, 1859.

3d. That upon the completion of said job, or about the day last aforesaid, the said Wells paid the said Selwood therefor, $350, the price stipulated in the agreement, and in all things kept and fulfilled said agreement on his part.

4th. That the granite of said monument was not of as good quality as that of the monument of Scott Campbell, standing in said cemetery, but on the contrary, was coarse and dull, too much impregnated with iron, and in all re-

spects greatly inferior to the Scott Campbell monument. That said monument, at the time of the erection thereof, was worth $200 less than it would have been, had the granite of which it was composed, been as good as that of the Scott Campbell monument.

5th. That when said monument was erected and paid for, as aforesaid, it was so covered with dirt and dust, that the said Wells could not, and did not discover the inferior quality of granite, and he made payment therefor, as aforesaid, upon the representation of said Selwood, that the rains and frosts would clean up said monument, and make it as bright as the Scott Campbell monument, which representations, he, the said Wells, believed to be true.

6th. That the rains and frosts did not clean said monument so as to make it as bright as the Scott Campbell monument, but on the contrary, after the loose dirt was washed from the surface, it grew worse in appearance by time and exposure to the weather.

7th. That after such development, and before the commencement of this action, the said Wells met the said Selwood, in the cemetery aforesaid, and called his attention to the bad appearance of said monument, and complained to him of the inferior quality of the granite, whereupon the said Selwood replied that the dirt and rust would come off.

8th. That said representations of said Selwood did not prove true, but on the contrary, said monument grew and still grows worse, by time and exposure to the weather; that the defects therein are organic, permanent and incurable.

And the referee found, as a conclusion of law, that the plaintiff was entitled to recover from the defendant in this action, as damages for the breach of said agreement, $200, with interest thereon from the 17th day of August, 1859, amounting to $308.26, besides his costs and dis-

Wells *v.* Selwood.

bursements. And he directed judgment to be entered accordingly.

Exceptions were taken to the findings of fact and conclusions of law. The defendant appealed to this court, from the judgment entered upon the report of the referee.

*J. Genter,* for the appellant.

*Mills & Dudley,* for the respondent.

*By the Court,* POTTER, J. The objections and exceptions to the findings of fact by the referee, are not sustained. It is true that there is no evidence returned in the case, to support the whole of the following statement, in terms, in the seventh finding, to wit: " That after such development, and before the commencement of this action, the said Wells met the said Selwood, *in the cemetery aforesaid, and called his attention to the bad appearance of the monument, and complained to him of the inferior quality of the granite.* Whereupon the said Selwood replied, that the said dirt and dust would come off." Though it does appear that after the development of the appearance complained of, and before the commencement of the action, the plaintiff spoke to Selwood about the dirt and rust, and Selwood said it would come off. This is contradicted by Selwood. It does not appear, from the evidence returned, that this interview between the parties *" was in the cemetery, and that the plaintiff there called his attention to the bad appearance of the monument."* But such testimony might have been given. The referee states, as to the evidence returned, that it " is all the evidence bearing upon the questions raised," and does not state that it is all the evidence given. It may be, that on the trial, no question was raised upon what now seems to have been omitted, or erroneously stated, in the case. Nor does it appear to me that the testimony omitted, or the fact as stated by the

referee, is material to the question to be determined, whether given or not.

The question, upon the undisputed facts, or rather upon the facts found by the referee, which there is sufficient evidence to sustain, is only a question of law. This question is presented in the first point of the defendant, in two propositions, substantially as follows: 1st. That the plaintiff was bound to return the property, or request the defendant to take it back, before he could maintain his action; 2d. That the plaintiff having received the monument, and retained it long after his alleged discovery of its defectiveness, not having offered to return it, having made no request of the defendant to take it back, and having given no opportunity to the defendant to take it back, cannot maintain the action. The case of *Reed* v. *Randall*, (29 *N. Y.* 358,) is relied upon as controlling this case. The case cited establishes the following propositions: 1st. That in executory contracts for the sale and delivery of personal property, the remedy of the vendee to recover damages on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee, after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendor offers to return the property. 2d. The retention of the property by the purchaser, is an admission, on his part, that the contract has been performed. 3d. If the article delivered is found, on examination, to be unsound, or not to answer the order given for it, he must immediately return it to the vendor, or give him notice to take it back; or he will be presumed to have acquiesced in its quality. 4th. He cannot accept the delivery of the property under the contract, retain it after having had an opportunity of ascertaining its quality, and recover damages, if it be not of the quality or description called for by the contract. Unless the case before us can be distinguished from *Reed*

v. *Randall*, (*supra*,) the judgment should be reversed; otherwise it may be affirmed.

Whether this was a contract for the sale of goods, or whether it is what is called a building contract, it is, in several particulars, distinguishable from the case of *Reed* v. *Randall*. Upon the hypothesis that it is an executory contract for the sale of goods, it is not only a sale by sample, or model, but is also a sale upon an express warranty; in both of which particulars the case of *Reed* v. *Randall* was not. That was an executory contract for the sale and future delivery of a merchantable crop of tobacco then growing. The court held that the language of that contract was, in legal effect, the same as the law would imply in the absence of words of an express contract; that a warranty cannot be predicated upon such a contract as was alleged in the complaint in that case; and they there held, that the rules of law, by which the rights of parties are regulated in respect to warranties, were not applicable to that case; and that the breach of such a contract was not a breach of warranty, but a mere non-compliance with the contract that the defendant had agreed to fulfill. If, then, the rule is different in regard to a breach of warranty, it becomes necessary to examine the authorities in the latter case, as the case before us is clearly a case of warranty. In the case of *Muller* v. *Eno*, (14 *N. Y.* 606,) Comstock, J., says, that in cases of the breach of warranty on the sale of goods, the principle must be regarded as settled by the two carefully considered cases of *Voorhees* v. *Earl*, (2 *Hill*, 288,) and *Cary* v. *Gruman*, (4 *Hill*, 625,) which is, "that the measure of damages is, the difference between the value of the goods if they had corresponded with the warranty, and their actual value." I shall proceed no further in search of authority to prove the rule as to damages in the case of a breach of warranty. I do not think this rule has been questioned.

The agreement of the defendant was, "to make and fin-

ish, in a good and workmanlike manner, and erect in the Johnstown cemetery, a granite monument, to be made from good Quincy granite, *and to be of as good quality of granite as the monument of Scott Campbell,* now standing in said cemetery." This is an agreement not only as to the model or sample as to form and size, but also, *as to the quality of the granite,* and this agreement is a warranty as to those particulars. The referee finds the breach of this agreement: "That the granite of said monument was not of as good quality as that of the monument of Scott Campbell, standing in the said cemetery, but, on the contrary, was coarse, dull, too much impregnated with iron, and in all respects, greatly inferior to the Scott Campbell monument;" and "that the defects therein are organic, permanent and incurable." And he finds that the difference between the monument, as erected, and one as good as the Scott Campbell monument, which was to be the model or sample, to be $200, and reports that sum in favor of the plaintiff. He also finds that, upon the erection of the monument by the defendant, the plaintiff paid him the contract price, "and in all things kept and fulfilled the agreement on his part." It is upon this finding of fact, together with the lapse of time after the erection of the monument, and the plaintiff's omission to return it, offer to return it, or give notice of its defectiveness, that the defendant makes the point that the plaintiff is to be held as having accepted the monument, or as having, in law, waived his objections to it.

The payment by the plaintiff, after the erection of the monument, of the contract price, is surely strong evidence of acceptance, but it is a question of evidence only, and, standing alone, would be sufficient, but is not conclusive, and it may be explained. And it was explained to the satisfaction of the referee, as he finds in the following words: "When the said monument was erected, and paid for as aforesaid, it was so covered with dirt and dust that

the said Wells could not, and did not, discover the inferior quality of the granite, and he made payment therefor, as aforesaid, upon the representation of the said Selwood, that the rains and frosts would clean up said monument, and make it as bright as the Scott Campbell monument, which representations the said plaintiff believed." We are bound to take this finding as true, and so doing, it is as ungracious as it is unreasonable to hold that the defendant should be allowed to claim that the act of the plaintiff, which he asks to have called a delivery, so procured or obtained by means of false representations of the defendant, should enure to the benefit of him who thus secured the delivery. So, too, the lapse of time is also evidence tending to prove delivery and acceptance, but in warranties it is only a question of evidence, not conclusive. And the following findings of the referee are legitimate matters of consideration on this point of evidence, viz : "That the rains and frosts did not clean the said monument so as to make it as bright as the Scott Campbell monument, but, on the contrary, after the loose dirt was washed from the surface, it grew worse in appearance by time and exposure to the weather; that the said representations of said Selwood did not prove true, but, on the contrary, said monument grew, and still grows, worse by time and exposure to the weather." This, I think, should silence the objection that the plaintiff did not bring his action immediately. But as I understand the law of warranty, these objections, even if not excused or explained, are of no avail as a defense. The purchaser is not bound, as a matter of law, in a case of warranty, to return the goods, or to notify the vendor of the defects. (*Fielder* v. *Starkin*, 1 *H. Black.* 18, 19.) The vendor who warrants, is presumed, in law, to know, because he had the opportunity to know, before the delivery, the condition of the things warranted. Nor do I know of any case, where there is a simple warranty, that the vendee has any right to return the goods, except the

right is reserved in the contract. (*Towers* v. *Barrett*, 1 *T. R.* 136. *Buchanan* v. *Parnshaw*, 2 *id.* 745.) I do not understand the case of *Reed* v. *Randall* to go to the extent of holding that there can be no warranty where the contract of sale is executory. If the court so held, it was *obiter*, for the case of warranty was not before them, as they had expressly therein decided. Most of the cases cited in that case, are cases of sales without warranty. And yet there is a class of cases of sales with warranty, where the vendee may so act with the commodity, after delivery, by using, disposing of, and appropriating to his own use the article so purchased, after full knowledge of its defects or inferiorities, without complaint, and without giving notice to the vendor, or giving him an opportunity to see, or to prove the soundness of the article, as that the principles of common justice and honesty would fix upon the vendee the presumption of his acceptance, and a waiver of all objection to its quality. Such was the case of *Hopkins* v. *Appleby*, (*rep. in* 1 *Stark.* 477,) cited in *Reed* v. *Randall.* This was a sale of Spanish barilla, for making soap, ordered in the middle of October, and delivered 26th of December, warranted by the vendor to be of the best quality. The vendor sued for the price ; the vendee set up the warranty, and that the barilla was of such inferior quality that it required double the usual quantity in making soap; but after their knowledge of this inferiority, they still continued to use it without making complaint, or giving notice for eight successive boilings, until they had used it all up. The vendor adduced evidence to show that the article was of the quality warranted, and that its quality might easily be ascertained by taste and inspection. Lord Ellenborough said : "When an objection is made to an article of sale, common justice and honesty require that it should be returned at the earliest period, before the commodity has been so changed as to render it impossible to ascertain by proper tests, whether it is the quality contracted for. Here,

on· the contrary, not a word was said, but the defendants used the whole, so that it became impossible for the vendor to ascertain its quality by proper tests. By giving notice at an early stage, the plaintiff would have been enabled to send a person of competent skill to examine the commodity, and to form an opinion as to the cause of failure. And this must have depended both on the skill of the manufacturer and the materials which he used." And he adds, in this most significant language: "The party who extinguishes the light, and precludes the other party from the means of ascertaining the truth, ought to ·bear the loss." It will be seen that this case was put upon the question of ·evidence; the question of presumption arising from the particular circumstances of bad faith on the part of the vendee. See also, to the same effect, *Fisher* v. *Samuda,* (1 *Camp.* 193.) There is still another class of cases, where there has been a sale with warranty, and the vendee afterwards discovers fraud or defects. If he desires to rescind the contract and sue for the money paid, in such case, he must return the article so warranted, or give notice of the rescission. In case of rescission, the vendee may bring his action for the whole sum he has paid. In the case before us, the action was not brought on a rescission, but on a breach of the contract. *Parsons* lays down the rule on breach of warranty thus: The buyer may bring his action at once, founding it upon the breach of warranty, without returning the goods; but his continued possession of the goods, and their actual value, would be considered in estimating the damages. (1 *Pars. on Cont.* 473, 474.) I think this is the true rule; and this is just what was done in the determination of this case. I think it is safe to say that the rule is, in cases of warranty, that the acceptance of the article on delivery, and the continuing of the possession and use of it, without notice of its defects, cast the burden of proof upon the vendee, on the trial, to give a satisfactory explanation and reasonable excuse why he had not

returned it, or given notice of its defects; in other words, he must overcome the strong presumption against him, that there has been a delivery by the vendor and acceptance of the article by him; or that he has waived his objection.

Take the case in hand, as the facts are found by the referee. A monument of a certain description and quality was contracted for; when erected, it was so obscured by dirt and dust that its quality could not be seen. Upon its erection the vendee was to pay the consideration; he performed on his part according to agreement, not because he was able to form an opinion from inspection of its quality; he could not know, then, whether it answered the contract; he paid upon the assurance that the action of the elements would satisfy him. The action of the elements more clearly exposed its defects, instead of clearing it of the disguise of dust and dirt; nor did the first examination, after it had been cleansed, detect its whole inferiority. It did not turn out, as warranted, to be of as good quality as the model. How much inferior to that it will eventually become, is not yet known; it grew worse by time, and the referee says, it still grows worse. If, in an action for breach of warranty, the vendee is to be charged with its true value, he ought to have the right, at any time within the limitation of the statute, to see how worthless it would become. All the authorities allow that he is entitled to a reasonable opportunity for examination. What is a reasonable time, is matter of evidence for the referee.

I have thus far examined this case upon the theory that it was an executory contract for the sale of goods. I think it is more appropriately a building contract, between the parties. If the defendant had engaged to construct a frame of timber, and erect upon the plaintiff's ground a wooden structure, cedar instead of stone, even though it be for a monument, it would, when erected, become real estate; and if the agreement was to build it according to

Wells *v.* Selwood.

a specified model, with a warranty that it should be equal to the model, and if, upon subsequent examination, though the form should be like the model, the material should be found to be of basswood or hemlock, I think he would have a remedy upon his contract. He has his building; it is a part of his real estate; he has paid the builder according to contract; but finds a worthless building, with only a right of action upon his contract; or a defense, if sued for the price. Must he fail in his action if he has not returned the structure to the builder, who resides twenty miles distant? If made of wood, it would doubtless be far more portable, and less ponderous than if constructed of granite; which, as in this case, weighed several tons. But I think no case can be found in the books, where it has been held that a structure of this kind must be returned, or a structure of any kind upon real estate; nor even that notice to the builder to take it away is required. If the building is not according to contract, the party for whom it is erected is not bound to pay; but if by representations as to its quality by the builder, which he believed, he has paid, then perhaps he could give notice of rescission of the contract on his part, and sue to recover all the money paid; or, if he chose to let the building remain, and use it, I apprehend he would be entitled to recover the difference in value, according to the rule of guaranties; and if sued for the price, he has a perfect defense.

If we are right in the position, that by the erection of this monument it became a part of the freehold, and the plaintiff chose to let it remain for what it was reasonably worth, I am aware of no case that holds that the warranty, in the contract, of its future qualities, is merged by its completion by the builder, and the omission by the plaintiff to return it, or to give notice to the builder to have it taken away. The agreement to construct, and the warranty that it shall be of a certain quality when constructed,

are not identical, but several, covenants; and the latter may survive the former, although delivery, in that case, as well as occupation, may be evidence of acceptance; yet mere occupation of a building is not a waiver of strict performance, but the question of waiver is one of intention, depending on the circumstances. (1 *Waite's Prac.* 117, *and authorities cited. Pike* v. *Butler,* 4 *N. Y.* 360, 362, 363. *Pullman* v. *Corning,* 9 *id.* 98, 99. *Ellis* v. *Hennton,* 3 *Taunt.* 52, 53.) And see, as a case in point, *Smith* v. *Brady,* (17 *N. Y.* 173, 176.)

These cases establish the principle here laid down as to building contracts, and the effect of taking possession of and using the structures after erection, when there has been a breach of the contract by the builder.

The result of these views is that the judgment should be affirmed.

Judgment affirmed.

[SCHENECTADY GENERAL TERM, April 7, 1868. *James, Rosekrans, Potter,* and *Bockes,* Justices.]