MONTANT v. MOORE et al.

(Supreme Court, Appellate Division, First Department.  December 30, 1909.):

1. EQUITY (§ 24*)—RELIEF FROM PENALTIES—POWER OF COURT OF EQUITY.

Equity has the power to open or disregard defaults or penalties imposed by contract incurred without the fault of the party against whom the default is sought to be enforced.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 69–76; Dec. Dig. § 24.*]

2. CONTRACTS (§ 316*)—WAIVER—PENALTIES AND FORFEITURES.

A party to a contract to whom a sum of money is payable at a specific time may waive the right to receive it at such time, or to enforce any penalty or forfeiture for nonpayment at the specific time.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1489; Dec. Dig. § 316.*]

3. CONTRACTS (§ 316*) — WAIVER — PENALTIES AND FORFEITURES — CUSTOMARY CONDUCT.

The right of a party to a contract to enforce the forfeiture for failure of the adverse party to make payments at specific dates subject to forfeiture for nonpayment may be waived by the parties establishing a custom by which a particular method has been adopted for making such payments, and, so long as such custom is complied with, the adverse party is not in default.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1489; Dec. Dig. § 316.*]

4. CONTRACTS (§ 227*)—PERFORMANCE OF CONDITION PRECEDENT—WAIVER.

A party to a contract may waive performance of a condition precedent.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1038–1041; Dec. Dig. § 227.*]

5. LANDLORD AND TENANT (§ 112*)—NONPAYMENT OF RENT—PENALTIES—WAIVER.

Where the parties to a lease calling for payment of rent on designated dates, subject to forfeiture for nonpayment, acquiesced for years in a new method of payment, the provision for payment was so far waived as to prevent a claim that a failure to pay on the day named was a breach of the lease until the lessee had notice of the fact that such custom would not in the future be continued.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 343–349; Dec. Dig. § 112.*]

6. LANDLORD AND TENANT (§ 83*)—STIPULATIONS—RIGHT OF RENEWAL—WAIVER OF FORFEITURE.

A lease for a specified term fixed the times for the payment of rent, and stipulated that the lessee performing all the covenants of the lease might obtain a renewal. For many years the lessee did not pay the rent on the days designated, but paid the installments thereafter, and then only after receipt of a notice given subsequent to the designated dates requesting payment. No notice was given as to an installment which became due on a designated date. *Held*, that the landlord waived payment of rent on the designated dates, and, before the lessee could be held to have violated the terms of the lease, notice that the rent was due must be given, and the lessee was entitled to a renewal lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 267; Dec. Dig. § 83.*]

Clarke, J., dissenting.

Appeal from Special Term, New York County.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Eliza C. B. Montant against Casimir de R. Moore and another. From a judgment for defendants, plaintiff appeals. Reversed, and new trial ordered.

See, also, 61 Misc. Rep. 45, 113 N. Y. Supp. 43.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Walter P. Vining ('Thomas W. Butts, on the brief), for appellant.

Shepard, Smith & Hawkins (William Mason Smith, of counsel), for respondents.

INGRAHAM, J. On the 8th day of April, 1887, one Mary Elizabeth Moore, the defendants' predecessor in title, leased certain premises in the city of New York to the plaintiff for a term of 21 years from the 1st day of May, 1887, at the yearly rental of $130, payable in semi-annual payments on the 1st days of May and November in each year. A copy of the lease is annexed to the complaint. There had been erected upon the said premises a dwelling house which belonged to the plaintiff, who was in possession of the premises under the said lease down to the time of the commencement of this action in September, 1908. J. M. Wells' Sons, a firm of real estate agents, had represented the defendants to collect the rent for the plaintiffs, and the same brokers were the defendants' agents to collect the rent due from subtenants for 10 years prior to the termination of the lease. These real estate brokers, thus representing both the plaintiff and defendants, were in the habit of sending a notice to the plaintiff when the rent was due, and, upon the receipt of such notice, plaintiff sent a check to the brokers for the rent. Checks were produced for the payments of rent from November, 1894, showing that payments had been made at varying dates from 5 to 25 days after the rent became due and had been accepted by the defendants. No objection was ever made on the ground that the rent was not paid in time nor had payment on the 1st day of the month when the rent became due been insisted on, and thus a custom had grown up in relation to the method by which the rent should from time to time be paid. This lease contained the usual covenant of re-entry, required the tenant to pay all duties, taxes, and assessments. The lease also contained a provision that:

"If at the end and expiration of the said term hereby granted, there shall be standing on the hereby demised premises, a good and substantial dwelling house of at least two stories in height, constructed of brick or stone, with fireproof roof, and the said party of the second part, her executors, administrators and assigns shall and will during the whole of the said term, well and faithfully keep all and every the covenants herein contained, on her and their part and behalf, that then the said party of the first part her heirs or assigns, shall and will, at such the end and expiration of the said term grant unto the said party of the second part her executors, administrators or assign, at her or their expense a new lease of the said lot of ground for a further term of twenty-one years thence next ensuing, at such reasonable annual rent, to be paid half yearly, as shall then have been agreed upon by the parties, or otherwise settled and ascertained as is hereinafter provided, but not less than the rent reserved by these presents."

Such renewal lease to contain a covenant for a further renewal of the lease for 21 years at a rent to be ascertained as provided for in

the lease, and a further provision that at the expiration of the renewed term the landlord was at her option either to pay to the tenant the just and fair value of the house upon the property to be agreed on or ascertained in the manner provided for or to renew the lease for a further term of 21 years at a rent to be ascertained in like manner. It was further provided that, in the event that the parties were unable to agree as to the rent to be reserved by the renewal lease, the amount of such rent should be ascertained by arbitrators, one to be nominated by the landlord and one to be nominated by the tenant, which nominations were to be made and signified by each party to the other at least one month before the expiration of the term; that, if the two persons to be so nominated and appointed should differ in judgment, they were to appoint a fit and impartial person to be associated with them for such purpose, and the decision of any two of the three persons so chosen to be final and conclusive. There was a dwelling house upon the premises which complied with this provision of the lease. The lease expired on the 1st day of May, 1908. On March 18, 1908, the firm of brokers which had acted as agents for both parties in relation to the premises wrote a letter to the plaintiff, notifying her that the lease held by her would expire on the 1st of May ensuing, and that the landlord was ready to renew the lease as provided in the lease itself for a further term of 21 years at the yearly rental of $425. Plaintiff refused to accept this rental, and about the 15th of April, to which time the appointment had been extended by mutual consent, appointed Mr. Dayton as arbitrator. On the 29th of April, 1908, the defendants wrote a letter to the plaintiff, notifying the plaintiff that he was the owner of the premises described in the lease and that he nominated a Mr. P. A. Geoghegan to act as arbitrator to determine what augmentation of the rent, if any, should take place during the next ensuing term of 21 years from May 1, 1908, and thus both parties prior to the end of the term had appointed the arbitrators who were to determine under the lease the amount that the tenant was to pay as rent for the ensuing term of 21 years. All questions having thus been settled as to the renewal of the lease except the amount of rent that the tenant was to pay, and the arbitrators who were to determine that amount having been appointed by both parties, all that was necessary for the parties to do to carry into effect the covenant for a renewal had been done.

On the 1st day of May, when the term expired, six months' rent of the premises was due. No notice was sent to the plaintiff that the rent was due in accordance with the existing custom that had been in force for over ten years, and the plaintiff, relying upon the fact that she would receive the usual notice when the rent was required, did not pay the rent on that day. On the 5th of May, 1908, the plaintiff received a letter from the attorneys for the defendants stating that under the terms and provisions of the lease which expired on May 1st the plaintiff was not entitled to a renewal unless she should have during the whole of the said term well and faithfully kept all the terms and covenants on her part to be performed; that the plaintiff had not kept all of these covenants, having violated, among others, the covenant to pay the rent; and that the landlord was therefore under no obligation to grant to the plaintiff a renewal, and did not care to do so. Im-

mediately upon receipt of this letter plaintiff sent to the defendants a check for the rent, which was accepted, and plaintiff received from the defendants' agents a receipt stating that the payment was accepted by the landlord without waiving any right to insist that the tenant's right to a renewal of the lease expiring on May 1, 1908, was terminated for a failure to observe a covenant of the lease. This position having been taken by the defendants immediately after the 1st of May, the arbitrators never proceeded to ascertain the amount of rent to be paid during the new term. It was conceded that the plaintiff was ready, willing, and able to pay the rent reserved under the lease on May 1, 1908. It further appeared that the plaintiff was in poor health at the expiration of her term, and had left the exclusive charge of everything relating to this property with her husband; that the only reason this rent was not paid was because the plaintiff's husband did not think of it, as he relied upon the custom of receiving a notice when the landlord required the rent. It appeared that all the taxes imposed upon the property during the term had been paid by the tenant, and that the tenant had complied with all the other terms and conditions of the lease. The defendant having taken this definite position, and refused to grant a renewal of the lease or recognize the plaintiff's right to a renewal lease in consequence of this default in the payment of the amount of rent due on the 1st of May, 1908, plaintiff commenced this action for a specific performance of the covenant and asked to be relieved from the default, if any.

By the terms of the lease the rent was due upon the 1st day of May, 1908. There was nothing in the lease which required this rent to be paid to the termination of the demised term. Under the terms of the lease, the plaintiff would have the whole of the 1st day of May to pay the rent before she was in default. The covenant in regard to the renewal of the lease was that:

"If at the end and expiration of the said term, hereby granted, there shall be standing on the hereby demised premises, a good and substantial dwelling house * * * and the said party of the second part, her executors, administrators and assigns, shall and will during the whole of the said term, well and faithfully keep all and every the covenants herein contained, on her and their part and behalf, that then the said party of the first part her heirs or assigns, shall and will, at such the end and expiration of the said term grant unto the said party of the second part her executors, administrators or assigns, at her or their expense a new lease of the said lot of ground for a further term of twenty-one years thence next ensuing."

The position of the defendants is a most technical one. Both parties had appointed their arbitrator to determine the amount to be paid on the renewal; and it is not claimed that up to the time that the lease had terminated on the 1st day of May, 1908, the plaintiff had failed to perform any of the terms and conditions of the lease to be kept and performed by her. She had not paid the rent that became due on the 1st day of May, 1908, but there is nothing in the lease to provide that that rent should be paid before the demised term had terminated, and, strictly speaking, I think it could well be said that, at the time of the termination of the lease, none of the terms or conditions to be kept and performed by the plaintiff had not been kept and performed. But the parties had by their uniform custom established a method of

collecting the rent of the premises. Undoubtedly the rent became payable on the 1st days of May and November in each year; but by this custom which had been clearly established before the rent was expected to be paid a notice to or a demand upon the plaintiff for it was made. This method of collecting the rent had hardened into a custom which I think can be fairly said to have become a part of the contract between the parties, so that there would be no default in the payment of the rent which would constitute a failure to comply with the terms and conditions of the lease until a demand had been made or notice given to the plaintiff that the rent was due and payment was required.

The power of a court of equity to open or disregard defaults or penalties incurred without the fault or neglect of the party against whom the default is sought to be enforced cannot be questioned. Nor can there be any question about the right of a party to whom a sum of money is payable at a specific time to waive the right to receive it at such a time or to enforce any penalty or forfeiture because of a failure of payment at the specific date named. And, where a party is entitled to receive payments at specific dates with a forfeiture or penalty imposed for a failure to pay at any date specified, the right to enforce such penalty or forfeiture may be waived by the parties having established a custom by which a particular method has been adopted for making such payments, and, so long as such custom is complied with, the person who is obligated to make the payments is not in default. This principle has been applied to a great variety of conditions, frequently in actions in relation to policies of life insurance. In Toplitz v. Bauer, 161 N. Y. 325, 55 N. E. 1059, the plaintiff was plainly in default both in the performance of the condition of the policy with the insurance company and in default in the payment of the note, for the payment of which the policy had been pledged as security. The court held that it must be conceded that no legal extension for the payment of the note was given, and that the plaintiff could not recover upon the theory that a right to demand and enforce payment of the debt was suspended; but that the extension of the time for the payment of the debt which must be supported by a sufficient consideration must not be confused with the waiver of the right to forfeit the pledge without previous notice to the pledgor or those who represented him, or were interested in the pledge, and that the parties occupied the same relation to each other as prevails between a vendor and vendee in executory contracts for the sale of land where it had been held that a forfeiture of the contract cannot be insisted upon by the vendor under such circumstances, although the contract containing an express provision that that result would follow a failure to make the payments at the time stipulated. The court then said:

"The same principle has been applied to other contracts, which, by their terms, provide for a forfeiture or a loss of the fruits of the contract by the failure to pay a certain sum or to do a certain thing at a specified time."

Thus a waiver has been implied where there was a covenant in the lease not to sublet without the written consent of the landlord under penalty of forfeiture, where the tenant sublet with the knowledge of the landlord who subsequently received the rent. Ireland v. Nich-

ols, 46 N. Y. 413. See, also, Gallagher v. Nichols, 60 N. Y. 438, and Dunn v. Steubling, 120 N. Y. 232, 24 N. E. 315. In Lindenthal v. Germania Life Insurance Co., 174 N. Y. 76, 66 N. E. 629, it was held:

"Where an insurance company makes a valid waiver of the punctual payment of premium on the law day without submitting another time of payment, but leaves the matter open and indefinite, it cannot enforce a forfeiture for nonpayment without reasonable notice to the policy holder or person in whose favor the time limit has been waived."

The fact that this is a condition precedent to the right of the plaintiff to a new lease, and not strictly speaking a forfeiture or a penalty, is not material, for a party to a contract can waive the performance of a condition precedent. See Pechner v. Phœnix Ins. Co., 65 N. Y. 195.

We think, therefore, that, where under a lease in which payment of the rent is required upon a day certain where the parties by a course of conduct extending for years have acquiesced in a method by which the rent is to be paid, the provision for payment in the original contract is so far waived as to prevent a claim that a failure to pay upon the day named is a breach of the condition until the lessee has notice of the fact that such a custom will not in the future be continued and payment is required upon the day named in the contract.

The court below found that it was the plaintiff's custom to make payment of the semiannual ground rent to the order of James M. Wells' Sons on behalf of the landlord; that said firm was also the agent of the plaintiff to collect the rent from the subtenant; that for many years prior to May 1, 1908, the plaintiff did not pay the various installments of rent on the very day upon which the installments became due, and plaintiff did not pay any of such installments until from 15 to 29 days after the same, respectively, became due, and then only after the receipt by the plaintiff from the said defendants' agents of a notice given subsequent to the day upon which payment was due that the said payment was overdue and requesting that it be made; that no such notice or any other notice was given with regard to the installment which became due on May 1, 1908, and that said defendants prior to May 1, 1908, always accepted the rental so paid after the second of such notice with question; that plaintiff has been at all times ready and willing to take a new lease of said premises for a term of 21 years from the 1st day of May, 1908, but said defendants have refused and still refuse to execute such renewal lease. Upon the facts the court dismissed the complaint.

We think upon the facts here established that the defendants waived the payment of the rent upon the 1st day of each month upon which it was payable, and that, before the plaintiff could be said to have violated one of the terms or conditions of the lease, notice that the rent was due must be given or a notice before the day upon which it was payable by the lease must be given that the custom theretofore established would not be continued, and that the landlord demanded the payment of the rent upon the day specified. The plaintiff was not therefore in default, and was entitled to a renewal lease. None of the cases cited by the respondents are in point. People's Bank v. Mitchell, 73 N. Y. 406, which is relied upon by the respondents, was an action at law to recover the value of the building upon the leasehold prem-

ises, and it was held that such an action could not be maintained where it appeared that the tenant had failed to pay taxes which were imposed upon the premises and which by the lease he was to pay. There was no claim there that the landlord had waived this breach of the covenant, and the court placed its decision squarely upon the proposition that, until the plaintiff had fulfilled this condition, he had no remedy at law against the defendants. There was no claim that the payment of the rent upon the day specified in the lease had been waived, which is the ground upon which we place our decision in this case.

It follows, therefore, that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and LAUGHLIN and SCOTT, JJ., concur.

CLARKE, J. (dissenting). The defendant is the owner of a piece of property on West Twenty-Fourth street. In 1866 a lease of said property was made to one David Seaman for 21 years. It was provided that, in case of the erection on the said lots of buildings of specified description the owner, his successors or assigns should, at the expiration of the said term, grant a new lease for the further term of 21 years at a reasonable rent to be ascertained as therein provided. On the 8th of April, 1887, a lease was made to the plaintiff, which recited the former lease and that buildings had been erected on the said lots of ground of the description mentioned. This lease provided that the lessee should have and hold the said lot from the 1st of May, 1887, for and during and until the full end and term of 21 years, paying $130 yearly and every year during the said term in two equal half yearly payments on the 1st of May and the 1st of November, the first payment to be paid on November 1st next, subject to the taxes, assessments, and incumbrances which the lessee should pay, "provided always that if it shall happen that the said yearly rent or any part thereof shall not be paid on any day on which the same ought to be paid as aforesaid then and at all times thereafter, it shall be lawful for the said party of the first part her heirs and assigns, into said demised premises * * * to reenter and repossess, * * * and that the party of the second part * * * shall and will on the last day of the term hereby granted, or other sooner determination thereof, well and truly surrender and deliver up the said hereby demised premises, enclosed by a good and sufficient fence into possession of the party of the first part * * * without any fraud or delay; * * * and it is hereby mutually agreed * * * that if at the end and expiration of the said term, hereby granted, there shall be standing on the hereby demised premises, a good and substantial dwelling house of at least two stories in height constructed of brick or stone, with fireproof roof, and the said party of the second part, her executors and administrators and assigns shall and will during the whole of the said term, well and faithfully keep all and every the covenants herein contained on her and their part and behalf, that then the said party of the first part, her heirs and assigns, shall, and will at such the end and expiration of the said term, grant unto the said party of the second part, her executors, administrators or as-

signs, * * * a new lease of said lot of ground for the further term of 21 years thence next ensuing at such reasonable annual rent, to be paid half yearly, as shall then have been agreed upon by the parties, or otherwise settled and ascertained as is hereinafter provided, but not less than the rent reserved by these presents. Such third lease to contain a covenant for a further term of 21 years at a rent to be settled and ascertained in the manner provided, or then pay to the said party of the second part, her executors, etc., the just and fair value to be ascertained in the manner hereinafter provided, of any house of the kind hereinbefore described which may be standing on the premises at the end of such term." It was further provided that whenever and as often as any future lease should end and expire, and any such dwelling house shall then be standing, "and the party of the second part shall and will during the whole of the term thereby granted well and faithfully keep all the covenants therein contained," the party of the first part shall be held and bound at her and their option either to pay the just and fair value of such house or to renew the lease for the further term of 21 years at a reasonable rent to be agreed on or settled, which new lease shall contain the like covenants and agreements respecting the renewal of said third lease. And it was provided that, if there was no agreement as to the augmentation of rent or the value of the house, each should nominate an impartial person at least a month before the expiration of the current term who should fix the amount, and, if these appraisers disagreed, they should appoint a third to act with them.

It will be seen that the rent was payable, not in advance, but at the end of each half yearly period, and that the option of a renewal or of paying for the value of the buildings was not given to the landlord on May 1, 1908. He was bound to give the tenant a renewal of the lease which expired on said day if the tenant should have complied with the conditions precedent on his part to entitle him to such renewal. Before the expiration of the term, on March 18, 1908, the landlord informed the tenant that her lease would expire on May 1st, that the rent for the next term would be $425 a year, and asked to be advised promptly if she wished to renew. This increased rent the tenant refused to pay and appraisers were appointed, the time therefor being extended by mutual consent, so that it was not until the 29th of April that the defendant appointed his appraiser. These appraisers have not yet reported. The plaintiff did not pay the rent due for the last half year of the 21 year lease on May 1, 1908. On May 4th the landlord wrote:

"Under the terms and provisions of your lease of No. 460 West 24th street, which expired on May 1st, you are not entitled to a renewal, unless you shall have, during the whole of said term, well and faithfully kept all of the covenants on your part to be performed. You have not, as we are informed, kept all of these covenants, having violated among others, the covenant to pay the rent. The landlord is, therefore, under no obligation to grant you a renewal, and does not care to do so. If you care, however, for a short lease, we are willing, on behalf of the landlord to take the matter up with you; otherwise we must ask you to surrender possession of the premises. Please let us hear from you at once."

On the receipt of this letter on May 5th the plaintiff sent a check which the landlord received on the 6th, the plaintiff simply inclosing it with a slip, which said:

"New York, May 5, 1908, ground rent 460 West 24th street."

For this the landlord gave a receipt reading as follows:

"May 6th, 1908, Received of Mrs. E. C. Montant claiming to be the tenant of lot 12 Chelsea Cottages, $65 on account the installment of rent due and payable May 1st, 1908. This payment is accepted by the landlord without waiving any rights to insist that the tenant's rights to a renewal of the lease expiring on May 1, 1908, are terminated through failure to observe the covenant in said lease."

In September thereafter the landlord commenced dispossess proceedings in the Municipal Court, and the plaintiff thereupon commenced this action in equity to enjoin the prosecution of such proceedings, to be relieved of her forfeiture, if any, and to compel the granting of a renewal lease for 21 years upon such rent as should be fixed by the arbitrators appointed or upon the method fixed by the lease in case such arbitrators refused or did not act by an ascertainment of the value of the land considered as vacant property and a rental based upon 5 per cent. of such ascertained value.

The plaintiff proved that she had never paid the rent upon the due day, and some 10 checks were offered in evidence showing payments from 25 to 10 days after the due day, and testified that she was accustomed to wait until she received notice, which was always received after the due date, and that she then sent the check, and that there was never at any time any objection made to the delay in the payment; that she was ready, willing, and able to pay on the 1st of May, 1908, the $65 due, and that it was a mere inadvertence in not paying; that she promptly sent her check upon receipt of the letter alluded to. She claims that this was a condition subsequent, and that a court of equity ought to relieve her of such a forfeiture; that she had a right to rely upon the course of conduct which had existed for so many years, the pleasant relations which had always been had and the appointment of the arbitrators so close to the end of the term.

The difficulty is that this is not a forfeiture. No lease has been forfeited by the failure of a performance of a condition subsequent. A right to a renewal of a lease has been lost by the failure to perform a condition precedent. Her sole right was to have a new lease, if at the time of the expiration of the old lease she had duly performed all the covenants therein contained. At the expiration of the term she had not performed because she had not paid the last six months' rent. People's Bank v. Mitchell, 73 N. Y. 406, seems decisive of the question. In that case there was a similar lease which provided for a further term or the payment of the just and fair value of any building which might be standing on the premises. The lease provided that the lessee should pay all taxes during the term, and contained a condition that, if the lessee should fail to perform any covenant or condition, it should be lawful for the lessor to re-enter. The court said:

"The performance of this covenant of the plaintiff precedes in time the provision for the renewal of the lease or the paying for the building by the

defendant, as therein provided; and, until the plaintiff had fulfilled this conditioned, he had no remedy at law against the defendant. The authorities are numerous which uphold this doctrine. * * * The plaintiff in his complaint has alleged that he has in all respects performed and fulfilled the covenants and conditions of the lease, as he was bound to do in order to make out a cause of action, and the answer denied such allegation. Upon the trial the question of performance was an issue in the case, and without proof of performance, as already stated, no recovery could be had. It appears upon the trial * * * that the taxes for the year 1866 were not paid by the plaintiff, and that this covenant was not fulfilled by him. It also appears from the findings that no evidence was offered showing any excuse, mistake, inadvertence, or surprise on the part of the plaintiff or fraud or deception on the part of the defendant. The plaintiff, therefore, by his own evidence shows that he is in default, and that he had not fulfilled an important covenant of the lease under which he claims to recover. Under such circumstances, it is not apparent how the alleged failure to fulfill can be excused."

This case also treats of the question of the appointment of appraisers:

"The consent to an appraisement by the defendant and the naming of an appraiser was not evidence of a performance by the plaintiff, nor of a waiver by the defendant, and did not operate as an estoppel upon the defendant. He had a right, as is quite obvious, to insist upon a performance after the submission had been made, and hence no waiver was legitimately to be inferred from his acts."

So in the case at bar the time to pay this last installment of rent had not expired when the appraisers were appointed, and their appointment had nothing to do with this last rent payment, but was an entirely independent act. The court in the case cited goes on to say:

"The counsel for the plantiff seeks to avoid the effect of the default in the payment of the taxes, upon the ground that there was only a technical forfeiture, which a court of equity will relieve. Equity will relieve against a breach of covenant for the payment of money. Where the covenant is in the nature of a penalty or forfeiture, and designed merely as a security to enforce the principal obligation, the parties can be put in the same position as if there had been no default. * * * So, also, in case of mistake, accident, fraud, or surprise, relief may be obtained in equity; but the rules stated, which are sometimes invoked to prevent injustice, have no application where, as in the case at bar, the mode of determining the rights of the lessor or his assigns to a new lease or to payment for his building are expressly provided for, and the liability of the defendant as specified is dependent upon the performance of conditions precedent which have not been performed. There is no ground upon which a court of equity should intervene to relieve the lessee from the consequences of a failure or neglect to perform."

This seems to be one of those cases where a party has the right to stand upon his legal rights no matter how selfish or harsh such conduct may appear to be. Pike v. Butler, 4 N. Y. 360; McIntosh v. Rector, 120 N. Y. 7, 23 N. E. 984. Here was an owner of property who was bound under the terms of his lease to renew for a long term of years at an annual rental much below what he thought the property could bring, and here was a lessee who was entitled to such renewal with the opportunity to sublet at very much more than he was receiving for the same period. That right depended, however, upon the clearly expressed covenant of full and complete performance during the whole term of the prior lease. The landlord did nothing to prevent the payment of the amount due. No fraud can possibly be attributed to

him, and the failure to pay upon the day cannot be attributed to surprise or mistake within the meaning of equity.   The Special Term has found on sufficient evidence that the defendant did not agree to extend the time of such payment, nor waive punctual payment of said installment of rent, nor did he do any act calculated or designed to mislead the plaintiff, or from which the plaintiff was entitled to infer that punctual payment of said rent would not be insisted on as a condition precedent to a renewal of the lease.   A forfeiture implies the loss of that which one has, and there was nothing forfeited.   The lease had expired.   It was a clear condition precedent which was not performed, and equity will not interfere any more than law.   "There is no ground upon which a court of equity should intervene to relieve the lessee from the consequences of a failure or right to perform."   People's Bank v. Mitchell, supra; Haines v. Barber, 113 App. Div. 696, 100 N. Y. Supp. 75.

The judgment appealed from should therefore be affirmed, with costs and disbursements to the respondent.