Argued and submitted January 18, affirmed October 23, appeal dismissed by
stipulation December 26, 1991

Jerome STALLWORTH,
*Respondent,*

*v.*

SAM YODER TRUCKING, INC.,
*Defendant,*

*and*

INTERSTATE CONTRACT CARRIER CORP.,
nka Ryder Freight System, Inc.,
Western Express and Interstate Rental, Inc.,
*Appellants.*

(CV 87-479; CA A60673)

819 P2d 316

Thomas W. Brown, Portland, argued the cause for appellants. With him on the briefs was Cosgrave, Vergeer & Kester, Portland.

W. Eugene Hallman, Pendleton, argued the cause for respondent. With him on the brief was Mautz Hallman, Pendleton.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J., retired.

## DEITS, J.

Interstate Contract Carrier Corp. (ICCC), located in Illinois, and Sam Yoder Trucking (Yoder) were defendants in a personal injury action. ICCC seeks review of a jury verdict that awarded damages to plaintiff, a truck driver.[1] ICCC argues that the trial court erred in allowing plaintiff's motion for partial summary judgment on ICCC's defense that workers' compensation was plaintiff's exclusive remedy and in denying its motion for a directed verdict on plaintiff's negligence allegations. It also assigns error to the trial court's permitting expert testimony concerning federal regulations governing the motor carrier industry and to the court's denial of its motion for a mistrial after plaintiff injected "insurance" into the trial. We affirm.

Plaintiff, an Illinois resident, responded to an advertisement placed in a Chicago newspaper by ICCC, an interstate motor carrier, seeking truck drivers. ICCC gave him an application and employment tests at its Chicago office and certified him to drive. It then referred him to Yoder, a company that owns trucks and transports freight on behalf of carriers. After plaintiff completed an application at Yoder's Ohio office, Yoder hired him to drive a Yoder truck hauling ICCC trailers. Plaintiff began work on May 23, 1985. ICCC issued him a driver's handbook that explained dispatching, loads, inspections, reports, logs, hours of service and safety programs.

The truck that Yoder assigned plaintiff to drive had been leased to ICCC for several months. While employed by Yoder, plaintiff filled out appropriate documents for ICCC and followed the procedures in the ICCC driver's handbook. Those procedures required him to have ICCC inspect the truck's brakes each month. Although he had been driving less than a month, plaintiff twice attempted to have the brakes inspected at Yoder terminals, but he was told that brake inspections were done only at ICCC's service centers. On June 14, 1985, plaintiff picked up a loaded ICCC trailer in Maryland bound for Washington. En route, near Pendleton, Oregon, he was injured when the brakes failed and the truck

---

[1] The jury found the percentage of each party's negligence: ICCC, 40%; Yoder, 30%; plaintiff, 30%. Yoder does not appeal.

ran through a stop sign into another truck. The brakes were inspected after the accident, and a component part of the braking system was found to be significantly out of adjustment, suggesting that it had not been serviced for some time.

The agreement between ICCC and Yoder provided for Yoder to lease trucks and supply drivers to ICCC. Yoder had the "sole right to select and discharge drivers" so long as they met and maintained minimum qualifications established by ICCC and state and federal regulations. Yoder agreed to "determine the means and methods of performance of all transportation services" and retain all responsibility for setting compensation and hours, work conditions and training and supervising drivers. It also agreed to carry workers' compensation insurance that named ICCC as an additional insured for its drivers. The agreement also provided that the drivers were not to be considered ICCC's employees:

> "The parties intend to create by this Agreement the relationship of CARRIER and INDEPENDENT CONTRACTOR and not an EMPLOYER-EMPLOYEE relationship. *Neither [Yoder] or [sic] its employees are to be considered employees of [ICCC] at any time, under any circumstances or for any purpose.* Neither party is the agent of the other and neither party shall have the right to bind the other by contract or otherwise except as specifically provided herein." (Emphasis supplied.)

ICCC was subject to federal Interstate Commerce Commission and Department of Transportation regulations. Under the agreement, Yoder assumed the responsibility to satisfy those regulations by providing and maintaining equipment in the required condition and conducting its operations in accordance with ICCC's procedures in its driver's handbook or otherwise.

Yoder also executed an agreement with plaintiff, which provided that

> "[plaintiff] is not an employ [sic] of [Yoder], but rather an independent contractor in business for himself, who for consideration, will from time to time, make truck deliveries requested by [Yoder]."

Plaintiff scheduled his own time and routes and was paid by the mile. His pay was dependent on ICCC's paying Yoder. He assumed responsibility for his own federal, state and local

withholding taxes, Social Security taxes, unemployment insurance premiums and all expenses relating to food, lodging and assistance on the road. He was not required, however, to pay for fuel, oil, repairs or motel expenses required by a breakdown. Yoder obtained Illinois workers' compensation insurance coverage for plaintiff, naming itself as the insured and ICCC as a certificate holder. Plaintiff paid for the coverage.

ICCC argues that the trial court erred in granting plaintiff's motion for partial summary judgment on ICCC's defense that the Illinois workers' compensation benefits plaintiff received were his exclusive remedy and in denying its motion for summary judgment on the same basis. The trial court did not state whether it was applying Oregon or Illinois law in deciding the summary judgment motions. However, because the parties agree that Illinois workers' compensation law applies, we will apply that law without deciding, under choice of law principles, whether it is correct that that law would apply.

■ ICCC contends that workers' compensation is the exclusive remedy for an injured employee under the Illinois Workers' Compensation Act, which provides:

> "No common law or statutory right to recover damages from the employer * * * for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act * * *." Ill Stat Ann ch 48, § 138.5 (Smith-Hurd 1986).

ICCC argues:

> "Application of the pertinent provision of the Act here is simple for one reason: plaintiff sought workers' compensation benefits from ICCC and received those benefits. *To do that, he had to be an employee of ICCC under the Act.*" (Emphasis supplied.)

However, ICCC did not provide the coverage under which plaintiff recovered workers' compensation benefits. Instead, the policy was obtained by Yoder and paid for by plaintiff. Yoder was named as the sole insured. ICCC was named only as "certificate holder," which gave it no status under the policy. As the certificate of insurance states:

"This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below."

ICCC argues that, even if plaintiff's receipt of workers' compensation benefits does not automatically make him its employee under the Illinois Workers' Compensation Act, plaintiff was either a "statutory" or a "common law" employee of ICCC and, therefore, workers' compensation benefits are plaintiff's exclusive remedy.

■ ICCC's theory that plaintiff· was its statutory employee is based on regulations adopted by the Interstate Commerce Commission under the Interstate Common Carrier Act, 49 USC § 11107(a)(4) (Partial revision 1991), under which interstate carriers, such as ICCC, that lease equipment must "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 CFR 1057.12(c)(1) (1990). For the purposes of insuring the carrier's financial responsibility to shippers and the general public, the courts of Illinois and other jurisdictions have held that the federal statute and regulations create a statutory "employer-employee" relationship between a motor carrier operating under an Interstate Commerce Commission permit and the operator of a leased truck. As explained in *Hershberger v. Home Transport Co.,* 103 Ill App 3d 348, 351, 431 NE2d 72 (1982):

"[T]he main thrust of the regulations is to prevent licensed carriers from escaping liability to injured members of the public by claiming that their lessor-drivers were independent contractors rather than employees. * * * [U]nder the regulatory scheme it is not necessary for the injured persons to establish that the carrier had a right to control the lessor-driver's activities or that the driver was acting in the scope of employment." (Citations omitted.)

Illinois courts, however, have used the legal fiction only when the plaintiff is a shipper or member of the general public. They have not used it to limit an injured worker to recovery under the Illinois Workers' Compensation Act. *Riddle v. Trans-Cold Exp., Inc.,* 530 F Supp 186, 190 (SD Ill 1982). Further, to do so would be totally contrary to the regulations' purpose of requiring carriers to ensure the safe operation and

maintenance of their leased equipment. Accordingly, we hold that plaintiff was not ICCC's "statutory employee."

■ The question of whether plaintiff is its common law employee, as ICCC asserts, or an independent contractor involves legal and factual determinations. In determining whether an employment relationship exists, the Illinois Supreme Court has said:

> " 'This court has often held that the right to control the manner of doing the work is probably the most important single consideration in determining whether the relationship is that of an employee or an independent contractor.' * * *

> " 'Other factors, such as whether compensation is on a time basis or by the job, the right to discharge, the nature of the workman's occupation, both in terms of the degree of skill required and in its kinship to the regular business of the employer, and the furnishing of materials, equipment or tools, are all to be taken into consideration.' " *Alexander v. Industrial Com.*, 72 Ill 2d 444, 449, 381 NE2d 669 (1978). (Citations omitted.)

ICCC argues that, under those criteria, plaintiff was its employee. It asserts that it advertised and tested plaintiff; that, if he had failed to meet its standards, it could require Yoder to discharge him; and that it required Yoder to provide workers' compensation coverage, to conduct its operation in accordance with ICCC procedures and to display ICCC's permits. It further points out that plaintiff had to follow its instructions, including completing maintenance reports, logs and inspection forms and contacting ICCC nightly and whenever problems arose. ICCC emphasizes that plaintiff's work was integrally related to its business of transporting goods in interstate commerce.

We conclude, however, that plaintiff was an independent contractor and not an employee of ICCC for purposes of workers' compensation. He had significant control over the details of how the contract was carried out. He was responsible for selecting his own routes and could obtain additional labor if necessary to complete the contract. ICCC did not have the right to discipline him and did not furnish him equipment other than the trailer. Only if he had failed to meet or maintain minimum qualifications could ICCC require Yoder to discharge him. Furthermore, he was paid by the mile,

rather than by the hour. His pay was subject to ICCC's paying Yoder, and he paid his own withholding taxes, self-employment tax and workers' compensation premiums. Under Illinois law, an arrangement for an independent contractor to pay for his own workers' compensation coverage is not illegal, but an arrangement for an employee to pay for his own workers' compensation coverage is illegal and criminal. Ill Stat Ann ch 48, § 138.4(g) (Smith-Hurd 1986).

Both the contract between ICCC and Yoder and the contract between Yoder and plaintiff provide that he is not an employee of ICCC. ICCC's agreement with Yoder provides:

"Neither [Yoder] or [sic] its employees are to be considered employees of [ICCC] at any time, under any circumstances or for any purpose."

The contract between Yoder and plaintiff provides that plaintiff

"is not an employ [sic] of [Yoder], but rather an independent contractor in business for himself, who for consideration, will from time to time, make truck deliveries requested by [Yoder]."

The trial court did not err in granting plaintiff's motion for partial summary judgment and in denying ICCC's motions for summary judgment.

ICCC next assigns error to the trial court's denial of its motions for directed verdicts. It contends that there was not sufficient evidence for the allegations to go to the jury that it was negligent in failing to maintain tractor brakes in proper working condition, in failing to inspect the brakes at reasonable intervals and in failing to train plaintiff how to inspect and adjust the brakes. In reviewing the denial of a motion for a directed verdict,

"we view the evidence, including inferences that can reasonably be drawn from it, in the light most favorable to the party opposing the motion. If the motion was denied and the moving party lost at trial, the denial will not be set aside, unless there was no evidence from which the jury could have found the necessary facts." *Leggett v. First Interstate Bank of Oregon,* 86 Or App 523, 527, 739 P2d 1083 (1987). (Citations omitted.)

ICCC argues that it owed no obligation or duty to plaintiff and, therefore, that the negligence allegations should not have been submitted to the jury. As explained in *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 17, 734 P2d 1326 (1987),

> "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

In that context,

> " 'duty' is simply 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " 303 Or at 15.

■ ICCC asserts a number of bases that it contends require the conclusion that, as a matter of law, it owed no obligation to plaintiff. First, it contends that, if plaintiff was an independent contractor, it had no control over him and, therefore, had no duty to exercise due care for his safety. The amount of control is a factor to consider in determining whether a person is an employee or an independent contractor. However, the absence of an employer/employee relationship does not automatically provide a "no duty" defense. The fact that plaintiff was an independent contractor did not, as ICCC contends, create a special relationship that limited its duty and precludes a determination that his injury was a foreseeable risk of the alleged negligent conduct.

■ There was evidence that ICCC retained some control over the equipment that plaintiff used. For example, plaintiff was responsible for all expenses incurred on the road *except* those related to the truck, *i.e.,* fuel, oil, servicing, repairs and motel costs when repairs necessitated them. ICCC and Yoder allocated those responsibilities between themselves. ICCC provided training to drivers who operated under its permit; it had had possession of the defective tractor for several months before plaintiff began driving it; and there was evidence that it assumed responsibility to make monthly inspections and maintained service centers for that purpose even though its contract delegated maintenance to Yoder. When the accident

occurred, plaintiff had driven the truck for less than a month and the brakes had not been inspected for more than a month. There was evidence that the accident was caused, at least in part, by brakes that were significantly out of adjustment. The jury could find from the evidence that ICCC's conduct created a foreseeable risk to defendant.

ICCC also contends that, even if it had some responsibility to plaintiff, it had delegated that authority to Yoder and, therefore, as a matter of law, cannot be held responsible. As discussed above, there was evidence from which a finder of fact could conclude that ICCC did not delegate all of its responsibility.

■■ ICCC also assigns error to the trial court's allowing expert testimony about Interstate Commerce Commission regulations that place certain non-delegable responsibilities for public safety on ICCC. ICCC contends that the testimony was not relevant, because plaintiff was not a shipper or a member of the general public, the classes that the regulations are intended to protect. However, even if ICCC is correct that plaintiff was not a member of the statutorily protected class, the regulations are relevant because they provide evidence of the minimum safety standards required of all trucks in interstate commerce. As said in *Bellikka v. Green,* 306 Or 630, 650, 762 P2d 997 (1988):

> "A statute can be used to establish the proper standard of care, and to show that the defendant met or failed to meet this standard. Even if the statutory standard of care cannot be shown to apply to the defendant, the statute might indicate standards of care that the defendant should have met. A statute might also be used to show that a defendant should have considered the risk to a particular group of people which includes the plaintiff in the case then before the court."

Because an understanding of the regulations requires "scientific, technical or other specialized knowledge," the expert testimony was admissible to assist the trier of fact in understanding them. OEC 702.

■ Finally, ICCC assigns error to the trial court's denial of its motion for mistrial after what it characterizes as plaintiff's intentional injection of insurance into the case. ICCC called an employee, Lavaty, who testified on direct examination:

"Q   And can you summarize for the jury what jobs you had [at ICCC and Ryder Freight System]?

"A   Yes. I have been the accounting manager, the revenue accounting manager, the insurance cargo claims and final settlements manager, manager of quality development, manager of financial operation analyst and supervisor of employer relations."

Lavaty then identified documents, including its contract with Yoder and inspection reports, and explained the procedures used in processing the reports. On cross-examination, she was asked where the monthly inspection reports were for the truck that plaintiff was driving. She responded that ICCC had had them at the time of final settlement and, after that, she could not find them. Plaintiff's counsel asked Lavaty when she received the accident report, and she replied that the copy was bad and she "could not accurately say." Plaintiff's counsel then asked:

"Q   Is this something that would have been called into your office? You have testified of your position in the insurance and the claims department. Is this something that would have been called into your office within hours or at most within days of the accident?"

ICCC moved for a mistrial.

The trial court did not abuse its discretion in denying the motion for mistrial. Evidence concerning insurance may be admissible where the evidence is relevant to issues in the case. *Rigelman v. Gilligan,* 265 Or 109, 118, 506 P2d 710 (1973). Lavaty's testimony was relevant. ICCC had already presented evidence that the witness had been "the insurance cargo claims and final settlements manager." She testified that some of the records concerning the truck, including the accident report, had been lost. In pursuing what had happened to these records, plaintiff's counsel asked questions about Lavaty's job duties, presumably to reaffirm that handling the records was part of her job. Plaintiff was entitled to inquire about the records, and questions about Lavaty's job duties were relevant to that. The reference to insurance merely reiterated a part of her duties that had already been brought out by ICCC's counsel on direct examination. The trial court did not abuse its discretion in denying the motion for mistrial.

ICCC's other assignments of error do not merit discussion.

Affirmed.