Argued and submitted October 13, 2006, affirmed June 13, 2007

Russell EO
and Karen Eo,
*Plaintiffs-Respondents,*

*v.*

John TRANE,
*Defendant-Appellant.*

Washington County Circuit Court
C033271CV; A127220

160 P3d 1018

Daniel R. Reitman argued the cause and filed the briefs for appellant.

Chris Covert argued the cause and filed the brief for respondents.

Before Schuman, Presiding Judge, and Ortega, Judge, and Breithaupt, Judge pro tempore.

BREITHAUPT, J. pro tempore.

**BREITHAUPT, J. pro tempore**

Defendant landlord appeals a judgment for plaintiffs in this landlord-tenant dispute. Defendant assigns error to the following decisions of the trial court: (1) that he waived his right to late fees and (2) that plaintiffs were not required to reimburse defendant for heating oil. In a third assignment of error, defendant asserts that, if he prevails on the first or both assignments of error, he will be entitled to costs and attorney fees as the prevailing party. We affirm.

## I. FACTS

The following facts are undisputed. In late August 2000, defendant (landlord) leased a house, located in Great Neck, New York, to plaintiffs (tenants). The parties signed a lease agreement and rider (the lease). At the time the lease was executed, tenants resided in New York and landlord resided in North Carolina. The lease set the rent at $3,600 per month, and tenants paid $7,200 as a security deposit. Under the lease, the rent was to be received by landlord on the first day of each month, and late payments were subject to a 10 percent late charge. On three occasions, landlord sent tenants letters regarding the late payments and late fees, and they acknowledge receiving at least one. Landlord continued to accept late rent payments after sending the letters.

Any heating oil in the tank at the beginning of the lease was to be paid for by tenants and any heating oil in the tank at the end of the lease was to be paid for by landlord. The parties approached this calculation by netting the two amounts; the amount of oil in the tank at the end of the lease is determinative as to who must reimburse whom. The oil level was not checked until landlord took possession of the premises, which was about one year after tenants vacated, and the oil tank was empty at that time. In addition, it appeared to landlord that someone had been in the house during the intervening year.

When tenants vacated the premises in late July 2001, landlord did not return tenants' security deposit, claiming that tenants owed late fees and reimbursement charges on heating oil. Tenants brought this action for the return of

the deposit. Landlord, at that time a resident of Washington County, counterclaimed based on various lease violations. The trial court ruled in tenants' favor and awarded costs and attorney fees.[1]

## II.  DISCUSSION

We review the legal questions for errors of law, and we carry out that review under the law of New York in this case.[2] The trial court's findings of fact will remain undisturbed if there is evidence in the record to support them. *See State v. Ziebart*, 172 Or App 288, 290, 16 P3d 1212, *rev den*, 332 Or 326 (2001) ("The trial court's findings of historical fact are binding on appeal if there is evidence in the record to support them.").

### A.  *First Assignment of Error: Waiver of the Late Charges*

In his first assignment of error, landlord argues that the trial court erred in ruling that he was not entitled to collect late fees. The trial court appears to have based its ruling on one or both of the following theories: (1) that landlord waived his right to collect late fees by accepting late rent payments without adequately asserting his rights and (2) that landlord sustained no damages from the late payments under *Woollard v. Schaffer Stores Co.*, 272 NY 304, 5 NE 2d 829 (1936). Landlord assigns error to the ruling on both theories. First, he argues that, under *Woollard*, he retains the right to contractual damages despite accepting late rent payments, and, second, he argues that the trial court reached its conclusion on the damages issue by impermissibly applying the Oregon rule on liquidated damages. We conclude that, to the extent the trial court based its ruling on the damages theory, it did so improperly. However, we conclude that the trial

---

[1] In addition to the claims at issue here, landlord also claimed that tenants damaged the property and reduced the rent payment by $800 in September 2000. The trial court ruled in tenants' favor on those claims and landlord does not appeal those rulings.

[2] The lease does not contain a choice-of-laws provision, but the parties agree that the applicable law is that of New York. Accordingly, we will apply that law without making a determination under choice-of-law principles. *Stallworth v. Sam Yoder Trucking, Inc.*, 109 Or App 280, 284, 819 P2d 316 (1991) (applying Illinois law without undertaking a choice-of-laws analysis when the parties agreed that Illinois law governed the dispute).

court was correct in its determination under the waiver theory. Accordingly, we focus our discussion on the waiver theory.

Landlord argues that accepting rent in the face of a breach constitutes waiver only of the right to terminate the lease and not waiver of the breached lease provision. The trial court disagreed, stating that demands for timely rent or payment of late fees could be waived and concluding that the notice provided to tenants by landlord regarding the late payments was insufficient to overcome such inaction. The lease does not contain a nonwaiver provision. We agree with the trial court and, for the reasons that follow, conclude that landlord waived his right to demand timely payments and, therefore, late fees, by accepting rent and failing to demand timely payments.

In making his argument, landlord relies on two New York cases decided at the trial court level, *Madison Ave. & 92nd St. Corp. v. Hickey*, 15 Misc 2d 1002, 182 NYS2d 180 (1959) (*Madison Ave.*), and *Melroy Realty Corp. v. Siegel*, 60 Misc 2d 383, 303 NYS2d 198 (1969), for the premise that acceptance of rent constitutes only waiver of the forfeiture and not waiver of the breached lease provision. Landlord reads both cases too narrowly; in both, the landlords were held to have waived the specific provision that was breached *in addition to* waiving the forfeiture.

In *Madison Ave.*, the landlord accepted rent for over a year with the knowledge that the tenant was in violation of a covenant against subleasing. 15 Misc 2d at 1003, 182 NYS2d at 181. The court stated that "[t]he acceptance by the landlord of rent with full knowledge [of the breach] constituted a waiver." 15 Misc 2d at 1004, 182 NYS2d at 181 (citations omitted). The court then went on to say that "the petitioner may not be heard to complain of that now which was permitted for a number of years. The *restriction in the lease is nullified * * *.*" *Id.* (citation omitted; emphasis added).

In *Melroy Realty Corp.*, decided ten years later, the landlord accepted rent one time with the knowledge that the tenant had impermissibly sublet the premises. 60 Misc 2d at

383-84, 303 NYS2d at 199. The court stated that "[t]he acceptance of rent by the landlord after the acquisition of knowledge by him of the violation of the terms of the lease * * * constituted a waiver of the right to invoke the forfeiture." *Id.* (citations omitted). The court, however, then went on to say that "[h]aving accepted rent, *there is a waiver of the provision of the lease* against subletting without the landlord's consent." 60 Misc 2d at 384, 303 NYS2d at 199 (citations omitted; emphasis added).

■      Not only is landlord's position unsupported—even controverted—by those cases, it finds no support elsewhere. It is well-established under New York law that acceptance of payments can constitute a waiver of the right to demand timely payments. *East 4th St. Garage v. L.B. Mgt. Co.,* 172 AD 2d 292, 292, 568 NYS2d 111, 112 (1991) (citing *61 E. 72nd St. Corp. v. Zimberg,* 161 AD 2d 542, 542-43, 556 NYS2d 46, 46-47 (1990)) ("Long-standing acceptance of late payment of rent can constitute waiver by the landlord of the right to enforce strictly a deadline for payment of rent."); *Smith v. Ellerbe,* 141 Misc 2d 699, 703, 534 NYS2d 100, 103 (1988) (citing *Montant v. Moore,* 135 AD 334, 339, 120 NYS 556, 559-60 (1909)) (concluding that it is "well settled that although a lease may stipulate the times when rent[ ] * * * [is] payable, the parties may by their course of conduct establish another method for the payment of rent * * *").[3] *See also Rasch's New York Landlord and Tenant* § 12:25 (2006).

■      It follows that, if the parties can change the deadline for payment by their conduct, the penalty for making a late payment is not enforceable. That comports with the conclusion of the *Ellerbe* court, which held that longstanding acceptance of late rent payments resulted in the waiver of "the right to enforce any penalty * * *." 141 Misc 2d at 703, 534 NYS2d at 103. That is what the trial court concluded here, and, on this record, we see no reason to disagree.

■      We note that it is possible for a landlord, by providing sufficient notice, to "reestablish the method of payment

---

[3] The issue in *Ellerbe* was the late payment of carrying charges in a cooperative apartment; however, the *Ellerbe* court referred to both rent and carrying charges in making its holding so we conclude that the holding applies equally to late rent payments. 141 Misc 2d at 703, 534 NYS2d at 103.

required by the lease." *Id.* (citing *Montant*, 135 AD at 339, 120 NYS at 559-60).[4] Sufficient notice requires that a landlord state that the "custom created by the tenant will not be permitted to continue." *Ellerbe*, 141 Misc 2d at 703, 534 NYS2d at 103. If a landlord does not notify the tenant in an appropriate manner, however, "he waives the right to enforce any penalty or forfeiture because of a failure of payment at the specified time. The customary method of payment will prevail over the method stipulated in the lease * * *." *Id.* Here, the trial court found that landlord's notice to tenant regarding the late payments and the late fees was not sufficient to reestablish the late fee provision. The evidence in the record supports the trial court's determination. Accordingly, we affirm.

## B.  *Second Assignment of Error: Payment for Unused Oil*

■      Landlord argues that the trial court erred in concluding that he was not entitled to reimbursement for the oil that was in the tank at the commencement of the lease. The trial court determined that the evidence supporting landlord's claim of damages for the unused oil was too speculative to be relied upon. Landlord asserts that the trial court applied a higher burden of proof than is warranted to prevail on a such a claim under New York law. We affirm the trial court's ruling.

■      Landlord asserts that, under *Borne Chem. Co. v. Dictrow*, 85 AD 2d 646, 650, 445 NYS2d 406, 413 (1981), evidence that supports a reasonable calculation of damages is all that is required to support a determination of damages in an action for breach of contract. That assertion is true as far as it goes, but landlord is jumping ahead. Under *Borne Chem. Co.*, he must first "prove [ ] with certainty" that damages were caused by the breach. 85 AD 2d at 650, 445 NYS2d at 413. The court stated:

---

[4] We note that *Ellerbe* was decided at the trial court level; however, we find it useful to refer to its conclusions because it provides a clear synthesis of the New York appellate court decisions that address the process by which a landlord may reestablish the due date of rent. *See Montant*, 135 AD at 339, 120 NYS at 559-60; *Janks v. Central City Roofing Co., Inc.*, 271 AD 545, 548, 67 NYS2d 355, 357 (1947); *Birnbaum's Estate v. Yankee Whaler, Inc.*, 75 AD 2d 708, 708, 427 NYS2d 129, 130-31 (1980).

"*Where it is certain that damages have been caused* by a breach of contract and the only question is as to their amount, there can rarely be good reason for refusing to grant, on that account, any damages whatever for the breach."

*Borne Chem. Co.*, 85 AD 2d at 650, 445 NYS2d at 413 (emphasis added).

The trial court here did not find that the evidence supporting the *amount* of damages was inconclusive; rather, it concluded that the evidence was too speculative to support the finding that damages were sustained at all, and we agree. Landlord asserts that, approximately one year after tenants relinquished possession of the property, the oil tank was empty and, during the intervening year, only these tenants had access to the property. The trial court found those assertions to be too remote in time, too inconclusive, and too speculative to be proof that the tank was empty when tenants relinquished possession of the premises in July 2001.

Landlord also argues that tenants' monthly usage can be inferred from the billing records and, based on that, the trial court could have calculated the amount of oil that tenants might have used during the course of the lease, and, therefore, the amount that might have been left in the tank at the end of the lease. Again, under *Borne Chem. Co.*, the fact that damages were caused by the breach must be proven with certainty, and the trial court properly declined to speculate about tenants' daily usage and what that might mean in terms of oil left in the tank at the end of the lease.

C.    *Third Assignment of Error: Attorney Fees*

Finally, landlord assigns error to the trial court's finding that tenants were the prevailing parties and were, therefore, entitled to an award of costs and attorney fees. Because we do not reverse the trial court on the first or second assignments of error, the third assignment of error need not be addressed.

Affirmed.